UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DEVENIA MACK, on behalf of herself and others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 11-40020-FDS |
| v. | ) ) | |
| WELLS FARGO BANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; MERSCORP; HARMON LAW OFFICES, P.C.; and COMMONWEALTH AUCTION ASSOCIATES, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND AND DEFENDANTS' MOTIONS TO DISMISS**

**SAYLOR, J.**

This is a putative class action involving the Home Affordable Modification Program for residential mortgages in default. Plaintiff Devenia Mack contends that defendant Wells Fargo Bank, N.A. refused to provide her with a loan modification for which she was eligible and improperly attempted to foreclose on her home. She seeks a declaratory judgment that Wells Fargo does not hold a valid mortgage, as well as damages and injunctive relief under theories of breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, violation of the Massachusetts Civil Rights Act, and violations of Mass. Gen. Laws ch. 93A. She also seeks to represent a class of similarly situated residential mortgagors of Wells Fargo in Massachusetts.

The case is before this Court following defendants' removal from Worcester Superior Court pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has moved to remand on the basis that the putative class does not encompass more than 100 members or place more than $5 million in controversy, as CAFA requires.

For the reasons set forth below, plaintiff's motion to remand will be granted. Defendants' motion to dismiss will be denied as moot.

## I. Factual Background

On April 21, 2008, plaintiff Devenia Mack executed a residential mortgage loan in the amount of $166,380. (Am. Compl. ¶¶ 17-19, Exs. 5, 6). The lender was New England Mortgage Corporation, and the mortgagee was defendant Mortgage Electronic Registration Systems ("MERS"), as nominee for New England Mortgage and its "successors and assigns." (*Id.* Ex. 5).[1] The last page of the note contains endorsements by New England Mortgage to Franklin American Mortgage Company, and by Franklin American to defendant Wells Fargo Bank, N.A. (*Id.* Ex. 6).

Mack initially made regular payments on this loan, and by November 2010 had paid $21,252.61 to Wells Fargo. (*Id.* ¶ 20). By September 2009, however, she was behind on her payments. (*Id.* ¶ 21). Mack contends that Wells Fargo advised her that she was eligible for a permanent loan modification under the federal Home Affordable Modification Program ("HAMP") if she made three reduced payments in October, November, and December,

---

[1] Defendant MERSCORP appears to be related to MERS. However, the amended complaint does not describe that relationship, nor does it describe how MERSCORP is involved in the alleged events.

2

respectively. (*Id.* ¶ 23).² Wells Fargo then sent her paperwork, which she promptly completed and returned. (*Id.* ¶ 24). Mack contends that on October 5, 2009, Wells Fargo told her it had not received her "HAMP paperwork" and that she was enrolled in a program called "Special Forbearance." (*Id.* ¶¶ 26-27). Mack again completed and faxed the requested paperwork to Wells Fargo. (*Id.* ¶ 27). She then made the three reduced payments in October, November, and December. (*Id.* ¶ 24).

On April 22, 2010, Mack received a letter from Wells Fargo stating that her request for a modification had been denied. (*Id.* ¶ 31). On May 26, she received a letter that foreclosure proceedings would be instituted by defendant Harmon Law Offices, P.C. as Wells Fargo's representative. (*Id.* ¶ 34). The foreclosure sale was scheduled for October 18, 2010. (*Id.* ¶ 35).

On October 13, Mack sent a letter to Harmon Law requesting evidence that Wells Fargo had the right to foreclose on the property. (*Id.* ¶ 36). Harmon Law provided a copy of an assignment to Wells Fargo from MERS, executed by a Harmon Law attorney in his capacity as Assistant Secretary and Vice President of MERS. (*Id.* ¶ 37).³

On October 15, 2010, Mack filed an action against Wells Fargo in Worcester Superior Court. The original complaint named Wells Fargo as the single defendant and sought a declaration that it lacked standing to foreclose on Mack's home. Mack also sought, and received, a temporary restraining order and then a preliminary injunction prohibiting Wells Fargo from foreclosing. (*Id.* ¶¶ 38, 40). Mack contends that Wells Fargo, acting through Harmon Law and

---

² For a more detailed discussion of HAMP, see *Bosque v. Wells Fargo Bank, N.A.*, 2011 WL 304725, at *1-3 (D. Mass. Jan. 26, 2011).

³ For a discussion of the MERS mortgage assignment process, see *Kiah v. Aurora Loan Servs., LLC*, 2011 WL 841282, at *1-2 (D. Mass. Mar. 4, 2011).

3

defendant Commonwealth Auction Associates, Inc., continued to advertise the foreclosure sale of Mack's home and simply pushed the date of the sale back. (*Id.* ¶ 39). She contends that Wells Fargo also continued to communicate with Mack directly, even though she was represented by counsel. (*Id.* ¶ 39).

Mack filed an amended complaint on December 23, 2010. The amended complaint added Harmon Law, Commonwealth Auction, MERS, and MERSCORP as defendants, added additional claims, and sought to certify a class of similarly situated persons.

The amended complaint contains seven counts that are based on two factual allegations. First, Mack contends that she was offered a permanent loan modification under HAMP, that she fulfilled her obligations for such qualification, and that Wells Fargo subsequently refused to modify her loan according to the promised terms. The amended complaint asserts claims against Wells Fargo for this conduct under theories of breach of contract (Count 2), breach of the implied covenant of good faith and fair dealing (Count 3), promissory estoppel (Count 4), and violation of Mass. Gen. Laws ch. 93A (part of Count 5).

Mack also contends that Wells Fargo never legally held either the note or the mortgage but nevertheless accepted Mack's monthly loan payments and sought to foreclose on her home, even after the Worcester Superior Court enjoined it from doing so. The amended complaint seeks a declaratory judgment that MERS did not have the authority to assign the mortgage to Wells Fargo (Count 1) and asserts claims for unjust enrichment (Count 7) and violations of Mass Gen. Laws ch. 93A (part of Count 5) and the Massachusetts Civil Rights Act (Count 6).

The amended complaint seeks to certify a class of similarly situated residential mortgagors of Wells Fargo in Massachusetts.

## II.     The Motion to Remand

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  This Court has jurisdiction, if at all, pursuant to the Class Action Fairness Act, which provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant [and] . . . the number of members of all proposed plaintiff classes in the aggregate is [not] less than 100."  28 U.S.C. § 1332(d); *see also* 28 U.S.C. § 1453 (removal of class actions).

There is no dispute that CAFA's minimal diversity requirement is satisfied.  Plaintiff, however, contends that remand is required because defendants have not shown that the class consists of more than 100 persons or that the matter in controversy exceeds $5 million.  In response, defendants refer to an affidavit stating that Wells Fargo has more than 500 residential mortgage loans in Massachusetts with aggregate unpaid balances of more than $25 million.  (Def. Opp. Remand Ex. 1 ¶¶ 5-7).

The defendant has the burden of showing that CAFA's jurisdictional requirements are satisfied.  *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 48-49 (1st Cir. 2009); *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 293 (D. Mass. 2009).  To meet this burden, the defendant must show a "reasonable probability" that the class contains more than 100 members and places more than $5 million in controversy.  *Amoche*, 556 F.3d at 48-49.  "[T]he reasonable

5

probability standard is . . . for all practical purposes identical to the preponderance standard adopted by several circuits." *Id.* at 50. "A party may meet this burden by amending the pleadings or by submitting affidavits." *Id.* at 49 n.3 (quoting *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001)).

To determine whether the defendant has met this burden, the Court examines the submissions of the parties, taking into account which party has better access to the relevant information. *Id.* at 51; *see Evans v. Walter Indus.*, 449 F.3d 1159, 1164 n.3 ("Defendants have better access to information about conduct by the defendants, but plaintiffs have better access to information about which plaintiffs are injured and their relationship to various defendants."). The analysis properly focuses on the class as it was understood at the time of removal. *Amoche*, 556 F.3d at 51. Although the plaintiff may not narrow the scope of the class *ex post* to defeat federal jurisdiction, the Court may consider a later statement for the purposes of clarifying vague language. *Id.* at 51-52.

Whether defendants have met their burden here turns on plaintiff's definition of the putative class. The amended complaint states that plaintiff "brings this action . . . on behalf of a class or classes consisting of Massachusetts residential mortgagors of Wells Fargo." (Am. Compl. ¶ 56). The amended complaint also states that "all members of the class will be similarly affected by the judgment sought in this action," and that "although [plaintiff] does not know the exact number of members of the proposed class, [she] believes that there are thousands of them." (*Id.* ¶¶ 57, 59).

Defendants interpret this language to propose a class of all residential mortgagors of Wells Fargo in Massachusetts. Citing to the affidavit of a Senior Vice President at Wells Fargo,

6

defendants contend that the numerosity requirement is satisfied because "as of January 24, 2011, Wells Fargo held and serviced more than 500 residential mortgage loans in Massachusetts." (Def. Opp. Remand Ex. 1 ¶ 5). Citing to the same affidavit, defendants further contend that the amount-in-controversy requirement is satisfied because "the total aggregate unpaid balance of the residential mortgage loans . . . exceeds $25,000,000.00." (*Id.* Ex. 1 ¶ 7).

If the class as defined in the amended complaint were as broad as defendants say, the submitted evidence would clearly satisfy CAFA's requirements. The complaint is poorly worded, making the analysis somewhat difficult. Nonetheless, the Court concludes that the class is not as broad as defendants suggest. The amended complaint states that "all members of the class will be similarly affected by the judgment sought in this action." If defendants' reading of the class were accepted, it could presumably include residential mortgagors who are not in default, who have never applied for a loan modification, and whose mortgages were not held or transferred by MERS. Such a mortgagor would not be affected at all by the judgment sought in this action. Although plaintiff's class definition is far from precise, it is clear that it encompasses something less than all residential mortgagors of Wells Fargo in Massachusetts.

Because the class defined in the amended complaint encompasses fewer than all residential mortgagors in Massachusetts, the Court finds that defendants have failed to establish a reasonable probability that the amount in controversy exceeds $5 million, and that remand is therefore appropriate.[4] The *Amoche* case, in which the First Circuit considered CAFA's amount-in-controversy requirement, is instructive. There, the proposed class consisted of consumers who

---

[4] The lack of clarity in the amended complaint also "favor[s] remand to allow the litigation to develop further." *Id.* at 52 n.5.

7

had each taken out a loan from one of nine lenders and then failed to receive a refund from the defendant insurance company on related insurance policies. The defendant presented evidence that the value of all refunds owed exceeded $5 million, but its calculation included refunds outside the scope of the class. *Amoche*, 556 F.3d at 52. The First Circuit rejected this evidence:

> [The refund] sum is not reliable. The [affidavit] admits that the [] amount is inflated by including those who do not fit the class definition, and plaintiffs contend that when only those who used one of the nine named lenders are counted, the [estimated amount] drops . . . Thus, the calculations from the [affidavit] do not demonstrate a reasonable probability that the amount in controversy exceeds $5 million.

*Id.* at 52-53.[5] Here, the aggregate unpaid amount of all residential mortgage loans in Massachusetts includes loans that are not part of the class, and therefore defendants' calculation is not a reliable basis for determining the amount in controversy in this case.

The absence of reliable evidence is especially significant because defendants are in the best position to have access to the relevant information. *See id.* at 52. "In assessing whether [a defendant] has carried its burden of showing a reasonable probability that the amount in controversy exceeds $5 million, we may consider what information reasonably within [that defendant's] control it failed to present." *Id.* The number of loan modifications offered in Massachusetts, as well as the number of mortgages assigned by MERS, should be reasonably available to defendants, yet they have provided nothing beyond the total number of residential mortgages Wells Fargo holds in Massachusetts. This is not enough to carry defendants' burden of showing a reasonable probability that the amount in controversy is $5 million or more.[6]

---

[5] The defendant's calculation in that case was based on data from only one state, from which the defendant extrapolated the refunds owed in the twelve other states listed in the class. *See id.* That part of the calculation is not relevant here.

[6] For the same reasons, defendants' estimate of the number of class members is not sufficient to establish the numerosity requirement of CAFA. Nor can defendants rely on the statement in the amended complaint that

Accordingly, plaintiff's motion to remand will be granted.[7] This disposition works no great prejudice on defendants, as they may remove to federal court at a later time if it becomes apparent that CAFA's requirements are in fact met. "[A] case that was not initially removable may later be removed if the basis for removal becomes apparent through a subsequent 'amended pleading, motion, order or other paper.'" *Amoche*, 556 F.3d at 53 (quoting 28 U.S.C. § 1446(b)).

## III. Motions to Dismiss

Because the Court will remand the case to state court, it need not consider defendants' motions to dismiss. They will therefore be denied as moot.

---

"although [plaintiff] does not know the exact number of members of the proposed class, [she] believes that there are thousands of them." This statement is obviously speculative, and the relevant information is clearly outside of plaintiff's knowledge.

[7] Because remand is appropriate, the Court need not address plaintiff's remaining arguments. It notes, however, that neither CAFA's "local controversy exception" nor its "home-state controversy exception" apply to the class as presently conceived. *See* 28 U.S.C. §§ 1332(d)(4)(A), (B). Plaintiff has the burden of showing that exceptions to CAFA jurisdiction apply. *Grimsdale v. Kash N' Karry Food Stores, Inc. (In re Hannaford Bros. Customer Data Sec. Breach Litig.)*, 564 F.3d 75, 78 (1st Cir. 2009).

Among other things, the "local controversy exception" requires that the conduct of a Massachusetts defendant "form[] a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb). Courts have defined "significant basis" to mean "significant in relation to the conduct alleged against other defendants in the complaint, and that the relief sought against that defendant is a significant portion of the entire relief sought by the class." *Manson*, 602 F. Supp. 2d at 295 (citing *Evans*, 449 F.3d at 1167). It is undisputed that Harmon Law and Commonwealth Auction are the only Massachusetts defendants. (*See* Pl. Mot. Remand at 8). In support of applying the "local controversy exception," plaintiff asserts that Harmon and Commonwealth "are involved in thousands of foreclosures in Massachusetts." (Pl. Mot. Remand at 10). By plaintiff's own admission, however, most of these foreclosures have nothing to do with the Wells Fargo mortgagors who are members of the class. In fact, Harmon Law and Commonwealth Auction play a relatively minor role in the alleged claims. They are named only in Counts 5 and 6 of the amended complaint, and their involvement relates solely to the foreclosure sale. Plaintiff has therefore failed to show that these defendants' conduct "forms a significant basis for the claims asserted."

The "home-state controversy exception" requires *all* of the "primary defendants" to be citizens of Massachusetts. *Manson*, 602 F. Supp. 2d at 296; *see* 28 U.S.C. § 1332(d)(4)(B). Wells Fargo is undoubtedly a "primary defendant." *See Manson*, 602 F. Supp. 2d at 296 (listing various definitions for the term). Because Wells Fargo is not a Massachusetts citizen, the "home-state controversy exception" also does not apply.

9

**IV.    Conclusion**

For the foregoing reasons, plaintiff's motion to remand is GRANTED. The remand is without prejudice to any future removal should a basis for removal under CAFA become apparent. Defendants' motions to dismiss are DENIED as moot.

**So ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 8, 2011